[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The court finds the allegations of the complaint proven and true as follows:
1. The plaintiff, 54, whose maiden name was Frances J. Lukos, and the defendant, 54, intermarried at Watertown, Connecticut on June 15, 1968.
2. The plaintiff has been a resident of Connecticut for at least twelve months next preceding the date of the filing of this complaint.
3. The marriage has broken down irretrievably.
4. All children have attained majority.
A judgment is entered on the complaint dissolving the parties' marriage on the ground alleged. The cross complaint is dismissed as now moot.
The parties enjoyed a viable marriage for 20 years. They have two adult daughters and one adult son. Their final separation occurred after the defendant was served at the start of this action. He vacated the home in the summer of 1990.
The defendant learned carpentry and cooking while serving in the U.S. Navy. After his discharge he worked for his father who owned a small building contracting business and as a union carpenter for a decade. After marrying the plaintiff, who had a son from a former marriage living with her, they saved the defendant's income while living on the plaintiff's income in order to buy a house.
The parties purchased a three-family house from the defendant's father with little money down. As part of the purchase the buyers received two building lots on the opposite side of street. The defendant then was able to acquire another three-family house with five garages and an extra lot from his CT Page 4185 brother. The defendant built a duplex on the extra lot. By building, buying and then renting, the parties eventually owned 10 or 11 dwelling rentals plus several garage rentals. By the early 1980's the defendant increased his business by obtaining the land on which he planned to build 55 units in the project known as "Ledgewood". The approval process took three to four years to complete. The vehicle used by the defendant for this real estate development was Ledgewood Estates Development Corporation. The plaintiff held no shares in this corporation although she was an officer. During the marketing of the units in Ledgewood, the corporation took back purchase money mortgages on at least eight units during 1986 and 1987, (cf. Defendant's Exhibit 39).
As of December 31, 1989 the Ledgewood Estates federal tax return listed total assets of $488,094.00, retained earnings of $246,807.00, and loans from stockholders of $189,217.00. The assets were mortgages generating $48,761.00 interest income for the year 1989.
Times were better for these parties and they were able to enjoy some of the luxuries of life such as new vehicles, expensive clothes, a fur coat and not feel the pressure of the bill collector.
The defendant obtained a contract to buy the land located at 1573 to 1589 Thomaston Avenue, Waterbury together with a restaurant business located thereon, (Defendant's Exhibit #20) on an agreement dated June 2, 1987. Prior to the transfer the defendant assigned his interest to the Park DeVille, Incorporated, owned equally by the plaintiff and the defendant, (Defendant's Exhibit #22). The parties built and after a major fire rebuilt a shopping plaza next to the DeVille Restaurant building which was also enlarged when remodeled.
After the first fire at the premises, the insurance coverage totalled $30,000 but in order to rebuild as the parties planned, they lent the Park DeVille $106,300.00 which loans were carried on the corporate books as "Loans from Stockholders". During 1990 and 1991 the plaintiff was able to reimburse herself $16,297.00 thereby reducing the remaining balance to $90,003.00. Since it is non-taxable, the cash received as loan repayment provides additional cash flow, (cf. Plaintiff's Exhibit A). The plaintiff's expert, Peter Becket of Lakeville is correct in asserting that the liquidation value is worthless. The earnings basis i.e. return on investment, arguably is marginal, but the CT Page 4186 stockholders, in this case, are working to protect not only their investment of $1,000 but their loans totaling $90,003.00. There is genuine motivation to keep the business alive, this quite apart from any return on investment consideration. Since the defendant is equally as willing as the plaintiff is to be the Park DeVille operator, there is no question but that the attraction continues to be the pay-back of the stockholder's loans.
Prior to the final separation, the defendant worked in the DeVille in the morning and sometimes in the evenings. The plaintiff worked in the DeVille during the day when she was not doing bookkeeping and other office work for the building enterprises.
For six months the plaintiff's married daughter and her spouse managed the DeVille, drawing $1,000 weekly. Then a major fire occurred which closed the restaurant for several months. The original building also had seven apartments which were all destroyed as well.
After the strip shopping stores were built, a second fire on June 29, 1990 destroyed them. The insurance settlement required the stores to be rebuilt, which they were. They remained empty and on August 3, 1992 the Plaza property including the DeVille were foreclosed, and title is now held by Resolution Trust Corporation, (Defendant's Exhibit #23). The DeVille has no lease agreement.
On Yale Street, Waterbury, T F began construction of the "Woodland Heights" Condominium. The Bank of Boston Connecticut furnished a construction mortgage in the face value of $5,000,000 against which the mortgagor drew down over one million. The mortgage was foreclosed and the mortgagee bought in the real estate at the committee sale.[1] The plaintiff and the defendant each guaranteed the loan and, in order to save their home and the DeVille, entered into a "Settlement Agreement" with the mortgagee whereby, in exchange for a release from further liability, Ledgewood Estates assigned its eight mortgages to Bank of Boston Connecticut along with an assignment from the plaintiff and the defendant of the Tarbet and Mudge mortgage, (Defendant's Exhibit #9). The price for saving the home is $120,000 plus interest and penalties due to the I.R.S. and the State from the defendant.
The turn in the real estate market accompanied by a downturn in the area's economy contributed to the financial morass the CT Page 4187 parties now are in.
Many accusations by each party directed at the other, including sexual misbehavior and financial foolishness, has not convinced the court that either party is the major cause of the marriage breakdown.
Having reviewed the evidence in light of the statutory criteria, the court enters the following orders.
1. The defendant's interest in 4 Kenilworth Street, Waterbury is awarded to the plaintiff who shall assume the existing mortgage balance. If a deed is not tendered within 30 days, the transfer may be effected by operation of law as provided by statute.
2. The defendant shall be allowed to remove any of his tools still at the former marital home along with his father's bust and his father's desk within 30 days of date.
3. The plaintiff's interest in the Park DeVille, Inc. is awarded to the defendant. The plaintiff shall cooperate with the defendant in the substitution of permitee, transfer of all books of account, liquor bills, tax returns and supporting records, and the like so that the trade shall not be disrupted. The plaintiff shall not incur any expenses other than the usual vendors' necessary to stock the bar during the transition. The defendant shall enter the premises as soon as he has a new permittee in place in substitution for the plaintiff.
The defendant shall thereafter be solely responsible for the corporation's assets and its liabilities incurred in the usual course of business except that the plaintiff shall be entitled to a weekly payment of $100 for 156 weeks as her remaining interest in the stockholders' loans account, she having received previous payments on account and the defendant's equity in their home.
Finally, the plaintiff shall be solely responsible for reimbursing the corporation or the defendant for any tax liabilities incurred but unpaid during the period of her exclusive possession and operation of the Park DeVille.
4. The anticipated refund of about $55,000 due T F Development Corp. for 1989 tax year shall be applied to the tax liability created by the settlement made with Bank of Boston CT Page 4188 Connecticut. This application should exhaust the refund.
5. Each party is awarded $1 per year periodic alimony to terminate upon the death of either party.
6. The court infers that, by listing the various tradesmen's bills, the parties have personally guaranteed payment. Therefore, the parties shall remain jointly liable for and shall each pay 50% of Signori and Gilmore, Winters Forte, Watterworth Signs, Tom Hill Realty, Tru-Air Systems, security deposits for Frances Commons, F F Concrete, Waterville Lumber, and Budwitz 
Meyerjack CPA's. As to the other debts each has listed on their respective financial affidavits, each shall remain solely liable therefor.
7. The parties shall divide the $16,000 fire settlement and the Frances Commons checking account containing $2,753. The Rents escrow listed on the plaintiff's financial affidavit shall be used to offset the security deposits and managed pursuant to law. Any excess shall be divided equally.
8. All other assets shall be retained as presently possessed.
Counsel for the plaintiff is directed to prepare the judgment file within 30 days of date.
HARRIGAN, J.